*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0057p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

DWAYNE BALLINGER, JR.,

*Petitioner-Appellee*,

*v.*

No. 12-1357

JOHN PRELESNIK,

*Respondent-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:09-cv-13886—Arthur J. Tarnow, District Judge.

Argued: November 27, 2012

Decided and Filed: March 4, 2013

Before: SILER, COLE, and SUTTON, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Mark G. Sands, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellant. Sanford A. Schulman, SCHULMAN & ASSOCIATES, P.C., Detroit, Michigan, for Appellee. **ON BRIEF:** Mark G. Sands, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellant. Sanford A. Schulman, SCHULMAN & ASSOCIATES, P.C., Detroit, Michigan, for Appellee.

_____

## OPINION

_____

SILER, Circuit Judge. Following an evidentiary hearing, the district court granted Dwayne Ballinger's petition for a writ of habeas corpus. The government appeals. For the following reasons, the district court's decision will be reversed.

## I. BACKGROUND

This matter arises from an early morning shooting that took place in Detroit, Michigan in 2006.  Two men, Darius Jones and Mario Harris, stood talking to their friend Raymon Nixon as he sat in his car, which was parked along a residential street. Another friend, Derrick Greene, watched the conversation from across the street as he sat in Jones's car.  Ballinger drove up and Nixon emerged from his car to stand with Jones and Harris.  Ballinger approached the three men and engaged in a heated argument with Jones, advising him "[y]ou better not bring your bitch ass back across Kentfield [Street] or it's on."  After a few minutes of arguing, Ballinger walked back to his car and retrieved an AK-47 rifle.  Nixon and Greene reported seeing Ballinger and Jones argue again briefly after which Ballinger began to shoot.  After seeing Jones fall, Greene ducked.  Nixon testified that he ran away after hearing the first shot.  Ballinger fled the scene and Nixon and Greene observed Jones and Harris lying on the ground.  Both Jones and Harris died of gunshot wounds.

At trial, Ballinger was represented by attorney Kerry Jackson.  While the government did not present any physical evidence tying Ballinger to the crime scene, it presented the eyewitness testimony of Nixon and Greene, who identified Ballinger as the shooter.  Both men testified that they knew Ballinger as a local drug dealer called "Mellow."  Nine days prior to trial, Jackson filed a list of potential alibi witnesses, which included Michelle Krisel.  After the government objected to the notice as untimely, Jackson withdrew it, stating that Ballinger was "not arguing alibi."  The only defense witness was Nicole Garrett, a friend of Ballinger's girlfriend.  She testified that she had known Ballinger for years and had never heard anyone call him Mellow.  The jury convicted Ballinger of two counts of first-degree murder and felony firearm possession.

Prior to sentencing, with the help of newly-retained counsel, Ballinger moved for judgment notwithstanding the verdict and a new trial based on ineffective assistance of counsel due to Jackson's failure to interview and call an alibi witness, Michelle Cunningham.  According to Ballinger, Cunningham was Michelle Krisel's married name and, thus, Jackson was aware of her possible testimony prior to trial.  Along with his

motion, Ballinger filed Cunningham's affidavit in which she stated that Ballinger was with her at the time Jones and Harris were shot. She also stated that, although she had been willing to testify on Ballinger's behalf, Jackson never contacted or interviewed her. While Cunningham did not identify herself as Michelle Krisel in the affidavit, Ballinger's attorney advised the court that Cunningham and Krisel were believed to be the same person. The court denied Ballinger's motions and sentenced him to life in prison.

On direct appeal, Ballinger argued for a new trial on the same grounds. Concluding that an evidentiary hearing was unnecessary, the Michigan Court of Appeals found that Ballinger had failed to establish that he had received ineffective assistance of counsel. *People v. Ballinger*, No. 275752, 2008 WL 1006917 (Mich. Ct. App. April 10, 2008). The Michigan Supreme Court denied Ballinger's application for leave to appeal. *People v. Ballinger*, 754 N.W.2d 896 (Mich. 2008).

In 2009, Ballinger petitioned in federal court for a writ of habeas corpus. Finding the state court's denial of a hearing to be unreasonable, the district court granted Ballinger an evidentiary hearing at which Jackson and Cunningham testified. Jackson testified that Ballinger never told him about Cunningham and that he actually never intended to argue alibi because Ballinger admitted committing the murders. Rather, Jackson had submitted the list of alibi witnesses as a tactic to mislead the prosecution and to cover himself in case several people came forward reporting that Ballinger had lied about having killed Harris and Jones. Cunningham testified that she was, indeed, previously known as Michelle Krisel and was with Ballinger at the time the crimes were committed. She also stated that Jackson never contacted her but conceded that, despite that fact, she had never tried to contact authorities or tell anyone of her story prior to giving the affidavit.

The district court gave significant weight to the fact that, after representing Ballinger, Jackson was disbarred. Jackson's disbarment, however, was not connected to Ballinger's case. Rather, Jackson reported, he decided to stop practicing law and, therefore, did not respond to bar complaints that had been filed against him. Finding that

Jackson's testimony lacked credibility, the district court determined that Ballinger had, indeed, received ineffective assistance of counsel as the result of Jackson's failure to investigate the alibi defense. *Ballinger v. Prelesnik*, 844 F. Supp. 2d 857, 870-72 (E.D. Mich. 2012).

## II.  ANALYSIS

We review a district court's grant of a habeas petition de novo. *Souter v. Jones*, 395 F.3d 577, 584 (6th Cir. 2005).  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") also applies, since Ballinger's habeas petition was filed in 2009. *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).  We may grant habeas relief for a person in state custody with respect to a claim that was adjudicated on the merits in state court only if the state court's ruling "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  While a district court's decision to grant an evidentiary hearing generally is reviewed for an abuse of discretion, *Abdus-Samad v. Bell*, 420 F.3d 614, 626 (6th Cir. 2005), the question of whether a hearing is permitted in the first instance in a habeas case is a question of law and must be reviewed *de novo*, *see Cullen v. Pinholster*, 131 S. Ct. 1388 (2011).

### A.      The district court erred in conducting an evidentiary hearing.

Based on the United States Supreme Court's decision in *Pinholster*, the district court erred in granting Ballinger an evidentiary hearing on his ineffective-assistance-of-counsel claim.  In *Pinholster*, the Court explained that "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Id.* at 1400.  Accordingly, district courts are precluded from conducting evidentiary hearings to supplement existing state court records when a state court has issued a decision on the merits with respect to the claim at issue. *See id*; *Atkins v. Clarke*, 642 F.3d 47, 49 (1st Cir. 2011).

Based on its brief but reasoned discussion of Ballinger's ineffective-assistance claim, there is no doubt that the Michigan Court of Appeals resolved the claim on its merits. *See Ballinger,* 2008 WL 1006917, at *1-*2. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011); *cf. McClellan v. Rapelje*, 703 F.3d 344, 350-51 (6th Cir. 2013) (finding that the state court did not reach the merits of petitioner's ineffective-assistance-of-counsel claim). The court applied *People v. Henry*, 607 N.W.2d 767 (Mich. Ct. App. 1999), which requires that counsel's performance be evaluated for both deficiency and prejudice, as also mandated by *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In finding that Jackson's trial performance was not deficient, the court described the broad discretion that attorneys have in choosing witnesses as a matter of trial strategy. *Ballinger*, 2008 WL 1006917, at *2. Further, there was no indication in the state court record that Krisel and Cunningham were the same person or that Jackson had any knowledge of Cunningham or an alibi involving her. *Id.* Citing the strong eyewitness testimony against him, the court concluded that Ballinger had not established that Cunningham's testimony would have likely affected the outcome of the trial. *Id.*

In arguing that the Michigan courts did not decide his claim on the merits and, thus, that the limitations of § 2254(d) do not apply, Ballinger relies on our pre-*Harrington* decision in *Brown v. Smith*, 551 F.3d 424 (6th Cir. 2008). In *Brown*, we concluded that the state court had not issued a decision on the merits because highly relevant documents were absent from the trial court record. *Id.* at 428-29. To the extent that *Brown* is inconsistent with *Harrington*'s definition of "on the merits," however, it is no longer the law. *See Brown v. Bobby*, 656 F.3d 325, 329 (6th Cir. 2011) (recognizing the presumption of state-court adjudication on the merits following *Harrington*); *see also McCoy v. Jones*, 463 F. App'x 541, 545 (6th Cir. 2012) (casting doubt upon the continued validity of *Brown* following *Pinholster*). It is now clear that a state-court adjudication, even when unaccompanied by an explanation, is presumed to

be on the merits and is to be reviewed through the deferential lens of § 2254(d). *Harrington*, 131 S. Ct. at 784.

Ballinger relies heavily upon the decision in *Winston v. Pearson*, 683 F.3d 489 (4th Cir. 2012). Upon Winston's habeas petition, the district court conducted an evidentiary hearing to develop the record as to Winston's ineffective-assistance-of-counsel claim. The Fourth Circuit concluded that the federal evidentiary hearing was proper, as nothing in *Pinholster* or *Harrington* mandated the conclusion that the state court had adjudicated Winston's claim on the merits. The court noted that *Harrington* dealt with the summary denial of claims in state court–not a state court's refusal to allow a petitioner to expand the evidentiary record. *Id.* at 502. While allowing a petitioner to supplement an otherwise sparse trial court record may be appealing, especially where he diligently sought to do so in state court, the plain language of *Pinholster* and *Harrington* precludes it. In *Atkins v. Clarke*, 642 F.3d 47, 49 (1st Cir. 2011), the Court of Appeals for the First Circuit found, in a case analogous to the one at bar, that the petitioner was not entitled to an evidentiary hearing in federal court. Noting that "evidence introduced in federal court has no bearing on § 2254(d)(1) review," *id.* (quoting *Pinholster*, 131 S. Ct. at 1400), the court rejected the petitioner's claim that the state court's decision was not on the merits because he had not received a "full and fair evidentiary hearing." *Id.* This does not leave a habeas petitioner without recourse. For example, if the state court did *not* adjudicate the petitioner's claim on the merits, *Pinholster* explains that a federal court can still hold an evidentiary hearing, subject of course to the restrictions of 28 U.S.C. § 2254(e)(2). 131 S. Ct. at 1401 & n.10. Or, if the petitioner cannot meet the conditions of (e)(2), he can always return to the state court and attempt to expand the record there. *See id.* at 1412 (Breyer, J., concurring in part and dissenting in part).

> **B.     The state court did not violate clearly established federal law in rejecting Ballinger's ineffective-assistance-of-counsel claim.**

We now turn to the merits of Ballinger's habeas claim, based on the record that was before the state court. Under *Strickland,* 466 U.S. at 687-88, a defendant claiming

ineffective assistance of counsel must demonstrate that "counsel's representation fell below an objective standard of reasonableness" and that he was prejudiced by counsel's deficient representation. Further, counsel should be "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. When combined with AEDPA deference, our review of trial counsel's performance is "doubly deferential." *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (internal quotation marks omitted). We are required to determine whether there is "any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 741. In other words, Ballinger is required to show that it was necessarily unreasonable for the Michigan courts to have concluded that counsel's performance was not constitutionally ineffective based upon the record that was before it at that time. *See Pinholster*, 131 S. Ct. at 1402-03.

Ballinger failed to establish that Jackson was aware of Cunningham as an alibi witness. While Ballinger's replacement counsel stated that Krisel and Cunningham were thought to be the same person, there was no evidence in the record to support that notion. Cunningham easily could have averred to her former name in the affidavit that was submitted to the trial court, but she did not. Further, while Krisel was included in the tendered alibi witness list, several other individuals were as well, and Ballinger does not contend that their testimony should have been presented. Nicole Garrett, Ballinger's only witness, was also on the list and, although she testified on Ballinger's behalf, she did not offer an alibi. Jackson's statements at the district court's evidentiary hearing support the notion that he was not aware of an alibi. He reported that he simply offered a list of names given to him by Ballinger, Ballinger's mother, or Ballinger's children's mother, "to make sure that [he and Ballinger] were covered in the event [he] needed to call the alibi witnesses if there was going to be an alibi." Counsel cannot be expected to interview unknown witnesses.

Even assuming, *arguendo*, that Jackson's conduct fell below acceptable professional standards, Ballinger's claim fails because he has not demonstrated prejudice. To prevail upon habeas review, Ballinger must show that there was no

reasonable basis for the Michigan courts to have concluded that he failed to demonstrate that he was prejudiced by counsel's performance. *See Pinholster*, 131 S. Ct. at 1410 (citations omitted). He has not made this showing. As the Michigan Court of Appeals pointed out, "Two eyewitnesses, Greene and Nixon, unequivocally identified [Ballinger] as the shooter at trial." *Ballinger*, 2008 WL 1006917, at *2. Both eyewitnesses observed the relatively lengthy altercation and, thus, had ample opportunity to identify the shooter. Both established that they were familiar with Ballinger based on his presence in the neighborhood, though they knew him only by his nickname Mellow. Based on Ballinger's conviction, it is clear that the jury found their testimony to be credible. Further, it is undisputed that Ballinger and Cunningham had an intimate relationship and, thus, it is within reason to assume that her credibility would be diminished as that of an interested witness. In light of the powerful eyewitness testimony against him, we cannot say that the state courts' resolution of Ballinger's ineffective-assistance claim was unreasonable.

For the reasons stated above, we **REVERSE** the district court's judgment granting a writ of habeas corpus, **VACATE** the writ, and **REMAND** with instructions that the case be dismissed.