# Order

**Michigan Supreme Court**
**Lansing, Michigan**

April 24, 2015

Robert P. Young, Jr.,
Chief Justice

149357

Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein,
Justices

PEOPLE OF THE STATE OF MICHIGAN,
        Plaintiff-Appellee,

v

                                       SC: 149357
                                       COA: 312721
                                       Wayne CC: 12-004553-FC

ASHLY DRAKE SMITH,
        Defendant-Appellant.

_____/

On March 10, 2015, the Court heard oral argument on the application for leave to appeal the April 1, 2014 judgment of the Court of Appeals. On order of the Court, the application is again considered, and it is DENIED, because we are not persuaded that the question presented should be reviewed by this Court.

KELLY, J. (*dissenting*).

I respectfully dissent from the majority's decision to deny leave to appeal and instead would reverse the judgment of the Court of Appeals and remand this case for a new trial. Because trial counsel failed to conduct a reasonable investigation into defendant's alibi defense, counsel's decision not to present the defense at trial constituted ineffective assistance of counsel.

Defendant was charged with several crimes, including armed robbery. The defense theory at trial was misidentification. Following a bench trial, defendant was convicted as charged. The Court of Appeals remanded the case to the trial court for a *Ginther* hearing,[1] limited to the issue of whether trial counsel performed ineffectively by failing to adequately investigate or present an alibi defense. Five witnesses testified at the hearing: defendant, his trial counsel, and the three alibi witnesses who appeared the day of trial but were not called to testify. The trial court ultimately determined that trial counsel's decision to not present the alibi testimony was reasonable and, regardless, that the failure to present the defense had no effect on the outcome of the proceeding. The Court of Appeals affirmed defendant's convictions and sentences in a split, unpublished decision.[2]

---

[1] See *People v Ginther*, 390 Mich 436 (1973).

[2] *People v Smith*, unpublished opinion per curiam of the Court of Appeals, issued April 1, 2014 (Docket No. 312721).

## INEFFECTIVE ASSISTANCE

Both the Michigan and the United States Constitutions require that a criminal defendant be afforded the assistance of counsel.[3] In *Strickland v Washington*, 466 US 668, 686 (1984), the United States Supreme Court stated that "the right to counsel is the right to the effective assistance of counsel." (Quotation marks and citation omitted.) The Court established a bifurcated test for ineffective-assistance claims:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. [*Id*. at 687.]

In holding that the Michigan Constitution does not afford defendants greater protection than its federal counterpart, this Court adopted the *Strickland* test in *People v Pickens*, 446 Mich 298, 338 (1994).

## DEFICIENT PERFORMANCE

The *Strickland* Court recognized that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."[4] "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."[5] "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation," but "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]"[6]

Trial counsel met with defendant to discuss trial strategy for the first time the night before trial. That meeting lasted approximately 15 minutes, a fact not disputed by counsel. Defendant testified at the *Ginther* hearing that aside from this one meeting on the eve of trial, counsel had only spoken with him during court proceedings and in the bullpen of the jail. Counsel did not dispute that during these earlier encounters defendant

---

[3] Const 1963, art 1, § 20; US Const, Am VI.

[4] *Strickland*, 466 US at 691.

[5] *Id*.

[6] *Id*. at 690-691.

informed her of his alibi defense, providing her with the names and contact information for potential alibi witnesses. Nevertheless, counsel did not file a notice of alibi witness, as she was statutorily required to do under Michigan law.[7] Filing a notice of alibi defense does not bind counsel to pursue that strategy. Rather, it simply evidences an "intention to claim that defense," MCL 768.20(1), and provides an opportunity for counsel to conduct further investigation into the validity of the defense.

Further, trial counsel did not speak with any of the alibi witnesses until the day of trial and, as a result, counsel did not have sufficient time to consider the relative cohesiveness of their testimony or the manner in which their testimony could affect the credibility of the victim's testimony. Had counsel met with the witnesses before trial, she could have determined the extent to which their testimony would have been advantageous to the defense. Instead, the decision to not present the alibi witnesses was based on a hurried meeting with them the day of the trial.[8] The decision to not elicit testimony from alibi witnesses was a product of inadequate research, which is not afforded a presumption of reasonableness under *Strickland*.[9] Because trial counsel failed in her duty to conduct a reasonable investigation, her performance was constitutionally deficient.

Trial counsel agreed at the *Ginther* hearing that her decision not to raise an alibi defense was strategic and "based on the idea that this identification was so weak that by putting on the alibi witnesses you didn't want to jeopardize the acquittal that you thought you were going to get." However, this rationale further supports my opinion that trial counsel rendered a deficient performance. First, an alibi defense would have supported the misidentification defense that counsel presented at trial; if the victim's identification of defendant was erroneous, then defendant was necessarily at some other place at the time the crime was committed. Second, if counsel believed that the prosecution's case-in-chief was so weak that an alibi witness was unnecessary, she could have tested this assumption by moving for a directed verdict after the prosecution rested pursuant to MCR 6.419(D). If the trial court had refused to grant the motion, trial counsel would have been able to then decide whether to present the alibi defense. As with the failure to file a notice of alibi defense, there would have been no negative consequences to the defense in moving for a directed verdict. Defendant had nothing to lose and everything to gain.

---

[7] MCL 768.20.

[8] While not addressed by the courts below, defendant and one of the female witnesses testified at the *Ginther* hearing that trial counsel did not feel that the two female witnesses were dressed appropriately for court. Defendant testified that trial counsel said she would not call either of them because of their attire.

[9] See *Strickland*, 466 US at 690-691.

For these reasons, the trial court's conclusion that counsel had made a "strategic decision" to not call the alibi witnesses is clearly erroneous. Although the trial court emphasized some inconsistencies in the witnesses' statements, the majority of the inconsistencies existed between the testimony of the two female witnesses and the one male witness. The trial court did not seem to recognize that counsel could have decided to present only the testimony of the two female witnesses, whose testimony supported one another's. In analyzing the inconsistencies among these three accounts, the trial court engaged in hindsight analysis, which is contrary to *Strickland*'s instruction that a reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."[10] Because trial counsel's decisions were not borne of adequate investigation at the time they were made, the trial court clearly erred by finding that counsel's decisions were reasonable.

## PREJUDICE

In order to be entitled to relief under *Strickland*, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[11] This Court has also recognized that " '[w]here there is relatively little evidence to support a guilty verdict to begin with (e.g., the uncorroborated testimony of a single witness), the magnitude of errors necessary for a finding of prejudice will be less than where there is greater evidence of guilt.' "[12]

In the present case, the evidence of defendant's guilt was particularly weak. The only evidence against defendant was the testimony of the victim. There was no other evidence corroborating the victim's eyewitness account. Further, the victim was forced to lie face down during the robbery, which was over within minutes. The defense also presented evidence that the victim held a racial bias toward defendant. On cross-examination, the victim admitted that he made remarks "in a racial context" regarding the defendant on Facebook after the robbery. Although the victim testified that he was "one hundred and ten percent" certain that defendant was the perpetrator, at other times his testimony was more equivocal. For instance, he also admitted that "the more I look back on it" after the robbery, "I convinced myself I did see what I seen."

The only evidence that supported a guilty conviction here was the uncorroborated testimony of a single witness. Therefore, a lesser magnitude of errors will suffice to

---

[10] *Id*. at 690.

[11] *Id*. at 694.

[12] *People v Trakhtenberg*, 493 Mich 38, 56 (2012), quoting *Brown v Smith*, 551 F3d 424, 434-435 (CA 6, 2008).

establish prejudice. The trial court based its finding of no prejudice on the fact that the three witnesses could not account for defendant's whereabouts for each minute of the evening the crime was committed. However, the trial court failed to understand that counsel could have minimized the inconsistencies of alibi witness testimony by calling only the two female witnesses. Furthermore, the two women testified that they were with defendant for the large majority of the evening and that defendant left their presence for, at most, 20 minutes. Given the distance between defendant's apartment and the scene of the crime, 20 minutes would have been barely sufficient for defendant to have committed the crime. The two women also testified that they and defendant had all suffered from a stomach flu that night. This detail is significant because it establishes how these women were able to remember the events of that particular night, and it suggests that defendant would have been physically unable to commit the crime in a 20-minute period.

I believe that the trial court's conclusion that counsel's errors did not affect the outcome of the proceedings was clearly erroneous. The trial court's determination was based on a misunderstanding of how an effective alibi defense could have been presented. The trial court did not understand that counsel need not have called all three witnesses, nor did the trial court understand the relevant timeline. Moreover, I do not believe that the trial court properly applied the standard that this Court outlined in *People v Trakhtenberg*,[13] i.e., that the prejudice inquiry must necessarily take into account the strength or weakness of the prosecution's case.

## CONCLUSION

Given counsel's dilatory and seemingly impassive preparation, I conclude that counsel's performance was constitutionally deficient under *Strickland* and that her failure to prepare for trial prejudiced defendant. Therefore, I would reverse the judgment of the Court of Appeals and remand this case to the Wayne Circuit Court for a new trial.

---

[13] *Trakhtenberg*, 493 Mich 38.

McCORMACK and BERNSTEIN, JJ., join the statement of KELLY, J.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

April 24, 2015



Clerk

s0421