NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0723n.06

No. 10-1467

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Oct 25, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| Michael Francis Welsh, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE EASTERN DISTRICT OF |
| | ) | MICHIGAN |
| Blaine Lafler, | ) | |
| | ) | |
| *Respondent-Appellee.* | ) | |

Before: MOORE and ROGERS, Circuit Judges; and HOOD, District Judge.[*]

PER CURIAM. Petitioner Michael Francis Welsh, a Michigan prisoner convicted of criminal sexual conduct and furnishing alcohol to minors, appeals from the denial of his petition for a writ of habeas corpus brought under 28 U.S.C. § 2254. Petitioner seeks to overturn his convictions on the grounds of ineffective assistance of counsel and insufficiency of the evidence. He also argues that habeas relief is proper in light of one victim's recantation of his trial testimony. After reviewing the record and considering the arguments presented on appeal, we **AFFIRM** the district court's denial of habeas relief.

---

[*]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

## I.      Factual Background and Procedural History

Petitioner was charged in Van Buren County, Michigan, with two counts of third-degree criminal sexual conduct (sexual penetration using force or coercion), Mich. Comp. Laws § 750.520d(1)(b), one count of fourth-degree criminal sexual conduct (sexual contact using force or coercion), *Id.* § 750.520e(1)(b), and two counts of furnishing alcohol to a minor. The charges arose from allegations that Welsh furnished alcohol to two teenage brothers, engaged in sexual penetration with the older brother (W.B.) and inappropriately touched the younger brother (T.B.).[1]

W.B. testified that he worked for Welsh on his property and often spent the night there on weekends. He also testified that, on March 10, 2001, Welsh performed oral sex on him, and on August 2, 2002, Welsh anally penetrated him. W.B. testified that he did not consent to having sexual intercourse with Welsh, and that Welsh told him not to tell anyone about what had happened.

T.B. testified that he also worked for and socialized with Welsh. T.B. also testified that, during July and August of 2002, Welsh furnished him with alcohol and on one occasion, touched T.B.'s penis over his clothes. T.B. told Welsh to stop and pushed him away. T.B. did not tell anyone about the incident because he was scared and embarrassed. T.B. testified that he considered Welsh a friend, even after the incident, and did not want to see him get into trouble. T.B. eventually told his parents about the incident when they questioned him after hearing that something suspicious may have been going on with Welsh and their sons.

The boys' father testified that he knew Welsh fairly well and considered him to be a friend at the time. He invited Welsh to his home and confronted him with his sons' allegations, secretly

---

[1] For the purposes of its analysis, the Court relies primarily on the facts as stated by the district court.

2

tape recording the conversation. When asked whether he had molested the boys, Welsh responded that he did not know or could not remember, but he did not think that he had done so. Welsh made it appear as though he had been intoxicated at the time and for that reason could not remember clearly. At trial, Welsh admitted that during his conversation with the boys and their parents, T.B. accused Welsh of grabbing him and that he did not deny the accusation at the time. He also admitted that, during the conversation, he had probably asked T.B. whether he had tried to do anything else to him. Welsh testified, however, that if he had apologized during that meeting with the family, he meant to apologize for what they were going through – not for any sexual activity.

Petitioner's sister-in-law, Dawn Welsh, testified that in July 2003, she was at a county fair with her son and Welsh. There, they saw T.B. and his friend, Alex. In violation of his bond conditions, Welsh approached T.B. and secretly tape recorded their conversation. T.B. responded to Welsh's questions by saying that Welsh never touched him inappropriately and that he was afraid of what his father would do to him. T.B. demonstrated no fear of Welsh at that time. During his testimony at trial, T.B. admitted having made these statements but testified that they were not true. He testified that he was just telling Welsh what he wanted to hear so that he and his sister-in-law would leave him alone.

On October 8, 2003, a Van Buren County Circuit Court found Welsh guilty of two counts of third-degree criminal sexual conduct, one count of fourth-degree criminal sexual conduct, and two counts of furnishing a minor with alcohol. The trial court sentenced Welsh to imprisonment for forty-five months to fifteen years for each third-degree criminal sexual conduct conviction and to forty-two days in prison for the other convictions. On April 12, 2004, Welsh filed a timely motion for a new trial before the Van Buren County Circuit Court alleging ineffective assistance of counsel.

3

An evidentiary hearing was held on July 9, 2004 and on September 4, 2004, Welsh submitted a supplemental brief in support of the motion. The trial court denied the motion on September 10, 2004, and Welsh appealed the decision to the Michigan Court of Appeals.

On March 28, 2005, while the appeal before the Michigan Court of Appeals was still pending, Welsh filed a motion to remand before the Michigan Court of Appeals based on newly discovered evidence – namely, that T.B. recanted his trial testimony to a private investigator. Welsh submitted a transcript of T.B.'s statements to the private investigator in support. On May 10, 2005, the court denied the motion "for failure to satisfy the requirements of MCR 7.211(C)." While the court provided no further detail as to the grounds for its denial, it is likely the motion was deemed untimely because Michigan Court Rule 7.211(C)(1)(a) requires that a motion to remand be made within the forty-two days allotted for filing an appeal of the trial-court order. See MCR 7.204(A)(2)(d); *People v. Jackson,* 790 N.W.2d 340, 349 (Mich. 2010) ("In order to file a proper motion to remand under MCR 7.211(C)(1), a defendant must file the motion within the time provided for filing his brief on appeal . . . .").

Welsh's counsel informed him of the denial of the motion in a letter dated May 20, 2005, and stated that oral argument for the pending appeal would still be held on June 8, 2005. The letter advised that during oral argument counsel would "make sure to inform the Court of the recent developments regarding [T.B.'s] recantation." On June 21, 2005, the Michigan Court of Appeals affirmed the trial court's denial of Welsh's motion for a new trial. The opinion did not mention or consider the new evidence regarding T.B.'s recantation.

Welsh appealed the decision to the Michigan Supreme Court, which on November 9, 2005, remanded the case for consideration of the sufficiency of the evidence in light of *People v. Carlson,*

644 N.W.2d 704 (Mich. 2002), but denied leave to appeal with respect to the other issues. In an unpublished opinion dated January 17, 2006, the Michigan Court of Appeals distinguished *Carlson* and again affirmed the trial court's denial of Welsh's motion for a new trial. *People v. Welsh,* No. 252561, 2006 WL 119158 (Mich. Ct. App. Jan. 17, 2006). Welsh filed a motion for reconsideration with the Michigan Court of Appeals on January 22, 2006, and the court denied that motion on March 16, 2006. The Michigan Supreme Court denied leave to appeal on October 6, 2006. *People v. Welsh,* 721 N.W.2d 796 (Mich. 2006).

On November 30, 2006, Welsh filed pro se a habeas corpus petition in the Eastern District of Michigan, claiming ineffective assistance of counsel and insufficient evidence to sustain his convictions of criminal sexual conduct. In his petition, Welsh submitted for the first time a sworn affidavit with T.B.'s recantation.[2] The district court denied Welsh's petition, finding that he was not entitled to relief on either claim, but granting a certificate of appealability with respect to both claims. *Welsh v. Lafler,* No. 2:06-15295, 2010 WL 940277 (E.D. Mich. March 12, 2010).

## II.    Standard of Review

As a general matter, we review de novo the legal basis for the district court's decision to grant or deny a petition for habeas corpus. *Joseph v. Coyle,* 469 F.3d 441, 449 (6th Cir. 2006) (citing *Burton v. Renico,* 391 F.3d 764, 770 (6th Cir. 2004)). Typically, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to cases brought after its effective date. *Id.* (citing *Woodford v. Garceau,* 538 U.S. 202, 210 (2003)). Under the AEDPA, a federal court may grant a

---

[2] When Welsh attempted to file a motion to remand based on prosecutorial misconduct with the Michigan Court of Appeals in December 2005, he submitted a written, but unsworn, affidavit from T.B. recanting his testimony. Those pleadings were returned to Welsh because he submitted them himself despite the fact that he was still represented by counsel. Consequently, the affidavit, even in its abbreviated unsworn form, was never actually filed in state court proceedings.

writ of habeas corpus with respect to a claim adjudicated on the merits in state court if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* at 449-50 (quoting 28 U.S.C. § 2254(d)).

The AEDPA's application in this case is complicated by the new evidence introduced by Welsh in the federal habeas proceedings: T.B.'s sworn recantation. The Sixth Circuit held in *Brown v. Smith* that the "deferential standard of review" set out in § 2254(d) of the AEDPA "applies only to a claim that has been 'adjudicated on the merits in State court proceedings.'" 551 F.3d 424, 428 (6th Cir. 2008) (quoting 28 U.S.C. § 2254(d)). The panel concluded that "whenever new, substantial evidence supporting a habeas claim comes to light during the proceedings in federal district court" we must apply the "pre-AEDPA standard of review: *de novo* for questions of law (including mixed questions of law and fact), and clear error for questions of fact." *Id.* at 429-30. It is possible that T.B.'s sworn recantation should be considered "new substantial evidence" not previously "adjudicated on the merits in State court proceedings" and therefore subject to the pre-AEDPA standard of review.[3]

The Supreme Court recently held in *Cullen v. Pinholster* that federal habeas review of a claim adjudicated in state court on the merits "is limited to the record that was before the state court." – U.S. –, 131 S. Ct. 1388, 1398 (2011). This Circuit has not yet had occasion to consider the effect

---

[3] *Brown* would not apply were it determined that (1) the denial of the motion to remand before the Michigan Court of Appeals constituted adjudication of the claim on the merits; or (2) Welsh was at fault for failing to present the sworn recantation prior to the federal habeas proceedings. *Brown,* 551 F.3d at 429. Because the parties have not briefed this issue and the case is ultimately decided on other grounds, the Court declines to reach this issue.

of *Pinholster* on a situation such as Welsh's. This issue need not be reached, however, because even under the less deferential pre-AEDPA standard of review, Welsh has not presented grounds for habeas relief.

## III. Analysis

In this appeal, we consider the same two grounds for habeas relief that Petitioner presented to the district court. He contends that the assistance of his trial counsel was ineffective and that the evidence presented at trial was insufficient to support his convictions of criminal sexual conduct. Our analysis is complicated by the introduction of the sworn affidavit containing T.B.'s recantation. The Court notes that "[b]ecause [Welsh] is proceeding pro se, we construe [his] filings liberally." *Spotts v. United States,* 429 F.3d 248, 250 (6th Cir. 2005).

### A. T.B.'s Recantation

In the sworn affidavit, T.B. states that his prior accusations of sexual abuse were fabricated: "I am writing this affidavit to try and right a wrong I committed against Michael Welsh and his family which subsequently caused Michael Welsh to be wrongfully convicted and sent to prison." In the affidavit, T.B. also opines that W.B.'s allegations of sexual misconduct were fabricated, explains that he falsely testified because of fear of his father, and states that his family experienced financial difficulties during the period of time when the allegations were made. Although Welsh's briefings are not entirely clear, he seems to introduce the affidavit primarily in support of his ineffective assistance of counsel claim to demonstrate that trial counsel's failure to hire a private investigator was prejudicial. Construing his pleadings liberally, the affidavit could also further his insufficiency-of-the-evidence claim, particularly with respect to the fourth-degree criminal-sexual-conduct conviction.

7

While the district court dismissed the persuasive value of the recantation to the private investigator by noting that the jury was aware of T.B.'s prior inconsistent statements at the county fair, the new evidence of T.B.'s sworn recantation is likely of greater significance. There is an appreciable difference between a recantation in a sworn affidavit and the unsworn statement made by T.B. when confronted by Welsh, who was acting in violation of his bond. There is a substantial likelihood that the jury would have assigned greater weight to T.B.'s sworn recantation than they did to testimony regarding T.B.'s unsworn statements at a county fair.

Nevertheless, T.B.'s sworn recantation must be viewed with caution. *Knickerbocker v. Wolfenbarger,* 212 F. App'x 426, 433 (6th Cir. 2007), *cert. denied,* 552 U.S. 896 (2007) (unpublished opinion) ("Affidavits by trial witnesses recanting their testimony are viewed with 'extreme suspicion.'") (quoting *United States v. Willis,* 257 F.3d 636, 645 (6th Cir. 2001)). This Circuit has previously held that "[e]ven if accepted, a post-trial recantation is generally not sufficient to grant habeas relief absent constitutional error." *Bower v. Curtis,* 118 F. App'x 901, 908 (6th Cir. 2004) (unpublished opinion). T.B.'s affidavit has not been corroborated with other evidence of innocence. *See id.* Moreover, the affidavit itself is troubling because it includes inconsistencies, such as the statement that T.B. and W.B. did not frequently stay over at Welsh's house on the weekends. Welsh himself explicitly contradicted this statement at trial. Thus, the Court concludes that the recantation here is an insufficient basis upon which to grant habeas relief regardless of the standard of review applied. *Cf. Souter v. Jones,* 395 F.3d 577, 590-97 (6th Cir. 2005) (discussing instance where recantation of expert testimony "rais[ed] sufficient doubt about [defendant's] guilt and that undermin[ed] confidence" in the jury's verdict).

**B.      Ineffective Assistance of Counsel**

Welsh claims that his trial counsel's assistance was ineffective in several respects. Specifically, he contends that his trial attorney's performance was deficient because: he did not hire a medical expert or a private investigator; he failed to admit and object to evidence appropriately; he failed to investigate and produce witnesses; and he failed to contradict prosecution witnesses. After reviewing the record and all relevant documents, the Court finds that the district court did not err in concluding that the state court's rejection of Welsh's ineffective assistance of counsel claim was not an unreasonable application of, or contrary to, clearly established federal law. Even considering Welsh's claims under the less deferential standard applied to claims involving newly discovered evidence, Welsh is not entitled to habeas relief.

The Supreme Court's decision in *Strickland* qualifies as clearly established federal law for purposes of evaluating ineffective assistance of counsel claims under the AEDPA. *Williams v. Taylor,* 529 U.S. 362, 391 (2000) (citing *Strickland v. Washington,* 466 U.S. 668 (1984)). To prove ineffectiveness of counsel's assistance, a convicted defendant "must show that counsel's representation fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688. Further, the defendant must show that he or she was prejudiced by counsel's performance. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Petitioner's bases for alleging ineffective assistance of counsel will each be analyzed in turn.

### 1.        Medical Expert and Private Investigator

Welsh argues that trial counsel was ineffective for failing to hire a medical expert and a private investigator. The district court found that, based on the fact that there were no medical records to review, the failure to hire a medical expert was a reasonable trial strategy. Welsh argues that a psychologist, rather than a medical doctor, could have been retained for the purposes of talking with the victims and reviewing available reports. Welsh does not explain, however, what he would attempt to prove through the use of a psychologist, or how his defense was prejudiced by the absence of a psychologist's testimony. Accordingly, Welsh has not shown objective unreasonableness or prejudice in connection with trial counsel's failure to hire a medical expert.

Trial counsel's failure to hire a private investigator, on the other hand, arguably "fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688. Welsh specifically requested that trial counsel engage a private investigator in aid of his defense, yet trial counsel failed to do so. In fact, trial counsel did not even take steps to this end until the eve of trial, at which point the trial court denied funding and an adjournment for an investigator to be retained and employed. Without the aid of an investigator to develop the factual record, Welsh's defense centered on the lack of credibility of the two victim witnesses and the suggestion that W.B. was retaliating against Welsh because W.B.'s girlfriend, also a minor, made sexual advances toward Welsh. Had a proper investigation been conducted, it is possible that additional facts in support of Welsh's innocence, or at least in support of a more probable motive for W.B. and T.B. to fabricate allegations, could have been presented. However, because Welsh has failed to present a sufficiently detailed and convincing account of what those facts would have been, despite the fact that a private investigator has since been employed, this claim fails to satisfy the prejudice prong of *Strickland.*

10

### 2. Failure to Admit the Audiotape of the Conversation at the County Fair

Welsh argues that his attorney should have admitted into evidence the audiotape of his conversation with T.B. at the county fair. During the conversation, T.B. stated that Welsh did not touch him inappropriately. There are compelling reasons that counsel's failure to admit this audiotape does not constitute ineffective assistance of counsel.

When defense counsel initially moved to introduce the audiotape, the prosecution objected and the trial judge ruled that it would be improper to introduce the audiotape to impeach T.B. without first establishing that he had made a statement inconsistent with its contents. At that point, the trial judge allowed the defense to recall T.B. to the stand. After questioning T.B., defense counsel withdrew its request to admit the audiotape and stated that counsel "believ[ed] the issue ha[d] been covered." Additionally, in its order denying a new trial, the trial court stated that the recording was of poor quality and that the only audible voice was that of Welsh, heard to be pressuring T.B. to retract his accusations. Counsel's failure to admit the recording was a reasonable strategy given that T.B. admitted his prior inconsistent statements during testimony. Moreover, Welsh has failed to demonstrate that failure to admit the audiotape was in any way prejudicial.

### 3. Failure to Investigate and Produce Witnesses

Welsh alleges that his attorney did not adequately investigate his case before trial and that he should have produced witnesses who were available to testify at trial. Further, Welsh alleges that the witnesses who did testify on his behalf were inadequately prepared for trial and inadequately questioned. In support of his habeas petition, Welsh has provided the signed, written statements of six individuals who assert that trial counsel did not adequately interview them or prepare them for testimony. Specifically, David and Dawn Welsh, Petitioner's brother and sister-in-law, stated that

11

they overheard defense counsel say, on the day the defense case was presented, that he did not know what witnesses he would call or in what order he would call them. Further, David and Dawn Welsh stated that they "had critical information for Michael Welsh's defense." Neither Petitioner nor these individuals, however, have elaborated on what information they possessed. For us to determine that Welsh's defense was prejudiced by the absence of this information, we would have to know its content. The information provided in the statements of the six individuals is simply insufficient to demonstrate that counsel's behavior was outside the range of acceptable practice. Even if Welsh's pleadings are liberally construed, he has failed to show that counsel's performance was objectively unreasonable or that his defense was prejudiced by counsel's investigation or production of evidence or witnesses.

### 4.     Failure to Subpoena Work Records and Admit Photographs

Welsh also argues that trial counsel's performance was ineffective because of counsel's failure to subpoena work records and to admit a photograph showing him at a golf tournament on August 3, 2002. First, Welsh fails to indicate how defense counsel's failure to subpoena his work records prejudiced his defense. He does not claim that work records would show that he was at work during the times the incidents are alleged to have taken place. Further, the exact date of the August 2002 incident with W.B. was never determined. For similar reasons, defense counsel's failure to offer into evidence a photograph of Welsh at a golf tournament did not prejudice his defense. Because the date of the August 2002 incident is not known, the photograph from the golf tournament has little to no probative value. Welsh also argues that photographs showing the victims voluntarily associating with him after the incidents are alleged to have occurred should have been admitted into evidence. While W.B. initially denied continuing to go to Welsh's home following the incidents,

12

he later acknowledged that he did indeed continue to go there. T.B. also acknowledged this, indicating that the was "over there a whole bunch" following the incidents. As a result, photographs showing Welsh with the victims following the incidents would add little, if anything, to Welsh's defense. As a result, Welsh's defense was not prejudiced by defense counsel's failure to introduce the photographs.

### 5. Failure to Object to Evidence and Contradict Prosecution Witnesses

Welsh alleges that defense counsel failed to object to evidence and to effectively contradict prosecution witnesses. As the district court pointed out, the record indicates that counsel thoroughly cross-examined the prosecution witnesses and called several defense witnesses. Although Welsh argues that counsel should have offered evidence to impeach the character of prosecution witnesses, he has not identified what grounds for impeachment might have existed. For this Court to find that defense counsel's failure to impeach constitutes ineffective assistance, Welsh must show that impeachment likely would have made a difference in the outcome of his trial. See *Davis v. Booker,* 589 F.3d 302, 309 (6th Cir. 2009). Welsh has failed to make that showing.

Welsh is correct that defense counsel did not object to the admission of the audio recording of the conversation that took place at the victims' home, but he suggests no basis upon which defense counsel might have objected to the admission of the recording. As Welsh is proceeding pro se, it is necessary to note that there do not appear to be any viable objections that could have been advanced aside from that the audiotape was unduly prejudicial under Michigan Rule of Evidence 403. It was not an unreasonable strategy for defense counsel to have refrained from objecting to its

13

admission on this ground.[4]  Some portions of the conversation were brought out during testimony at trial, including Welsh's own testimony.  Even if Welsh were able to show that defense counsel's failure to object fell below accepted professional standards, he has still not shown that counsel's failure to object prejudiced his defense.  As noted previously, there is substantial evidence against Welsh, including both victims' testimony.  It is highly unlikely that, had defense counsel objected to the introduction of the recording, the outcome of the trial would have been different.

Ultimately, there is a strong presumption that counsel's performance lies within the wide range of reasonable professional assistance.  *Strickland,* 466 U.S. at 689.  This Court's review of trial counsel's performance is highly deferential.  *Id.*  Welsh has not overcome the presumption that counsel's decisions were grounded in reasonable trial strategy.  Accordingly, the district court correctly denied Welsh's ineffective-assistance-of-counsel claim.

## C.    Sufficiency of the Evidence

Welsh also challenges his convictions as being based on insufficient evidence.  In support of this argument, Welsh contests the credibility of the victims' testimony and contends that there was insufficient evidence of force or coercion to constitute third and fourth-degree criminal sexual conduct under Michigan Law.  A criminal defendant cannot be convicted of a crime without proof beyond a reasonable doubt of every element of the offense with which he is charged.  See U.S. CONST. amend. XIV; *In re WInship,* 392 U.S. 358, 364 (1970).  We conclude that the district court did not err in finding that the state court's adjudication of Welsh's case did not result in a decision

---

[4]  It is troubling that defense counsel could not definitely establish that he reviewed this audiotape prior to its introduction at trial.  However, because counsel stated that he at least reviewed a transcript of the audiotape prior to trial, this failure did not constitute ineffective assistance of counsel.

that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

The Court's sufficiency determination must generally be made without reweighing the evidence. See *Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009). Sixth Circuit precedent is clear that our review of credibility is highly deferential and that an "error must be stark" for a credibility determination to be overturned. See *Otte v. Houk,* – F.3d –, No. 08-3247, 2011 WL 3524301, at \*5 (6th Cir. Aug. 12, 2011) (internal quotation marks omitted). Because Welsh has not identified a "stark" error in the credibility determinations in this case, his claims do not merit habeas relief.

Welsh's other sufficiency challenge fails as well. In sufficiency-of-the-evidence challenges, the Court must determine whether, viewing all trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Konteh,* 567 F.3d at 205 (citing *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)). Even if this Court were to conclude that a rational trier of fact could not have found the force or coercion element to be satisfied, we must still defer to the state appellate court's sufficiency determination, so long as it is not unreasonable. *Id.*

In determining whether to grant Welsh's writ, we must refer to the substantive elements of the applicable criminal offenses as defined by state law. See *Jackson,* 443 U.S. at 324. Under Michigan law, a person is guilty of criminal sexual conduct in the third degree if the person engages in sexual penetration with another person, and force or coercion is used to accomplish the penetration. Mich. Comp. Laws 750.520d(1)(b). It was under this statute that Welsh was convicted for the two incidents involving W.B. "Force," for the purposes of this statute, "encompasses the use of force against a victim to either induce the victim to submit to sexual penetration or to seize control

15

of the victim in a manner to facilitate the accomplishment of sexual penetration without regard to the victim's wishes." *People v. Carlson,* 644 N.W.2d 704, 709 (Mich. 2002).

A person is guilty of fourth-degree criminal sexual conduct if he or she engages in sexual contact with another person and "[f]orce or coercion is used to accomplish the sexual contact." Mich. Comp. Laws 750.520e(1)(b). "Force or coercion," for the purposes of this statute, is "determined in light of all the circumstances and is not limited to acts of physical violence." *People v. Premo,* 540 N.W.2d 715, 717 (Mich. Ct. App. 1995) (finding that abuse of position of authority may constitute coercion for purposes of fourth-degree criminal sexual conduct). The Court will consider the incident underlying each count of criminal sexual conduct separately.

### 1. W.B. and the March 2001 Incident

W.B. testified that, on March 10, 2001, Welsh gave him alcohol and took him to a rock concert. W.B. was sixteen years old at the time. After the concert, they returned to Welsh's home, where both spent the night. W.B. testified that he was awakened by Welsh fondling his penis and that Welsh performed oral sex on him. W.B. testified that he did not say anything at the time because he was too embarrassed.

The Michigan Court of Appeals found that there was enough evidence to support the conviction of third-degree criminal sexual conduct because Welsh had abused his position of authority and trust. The Michigan Supreme Court remanded the issue for reconsideration in light of *People v. Carlson,* 644 N.W.2d 704 (Mich. 2002). The Court of Appeals distinguished *Carlson* and affirmed Welsh's convictions. *People v. Welsh,* No. 252561, 2006 WL 119158 (Mich. Ct. App. Jan. 17, 2006). The statute defines force or coercion by example, and does not explicitly include abuse of a position of trust. Mich. Comp. Laws 750.520d(1)(b). The text of the statute provides,

16

however, that force or coercion is not limited to the specific circumstances enumerated in the statute. *Id.* The Michigan courts have defined force or coercion, for purposes of the criminal sexual conduct statutes, to include such abuse of position. See *Premo,* 540 N.W.2d at 717.

A reasonable juror easily could have concluded that force or coercion, as defined by Michigan law, occurred in the 2001 incident involving W.B. Trial testimony revealed that both victims considered Welsh to be a friend and even referred to him as "Uncle Mike." Welsh was in his forties at the time of the incidents, while the victims were teenagers. The victims did odd jobs on Welsh's property for which Welsh paid them in cash and gifts. On the evening of the incident, Welsh had taken W.B. to a rock concert and furnished him with alcohol. This evidence is more than sufficient for a jury to reasonably conclude that the force or coercion element required for a third-degree criminal sexual conduct conviction was proven beyond a reasonable doubt.

### 2.      W.B. and the August 2002 Incident

W.B. testified that he spent the night at Welsh's house in August of 2002. Sleeping on his stomach, he awoke to find Welsh on top of him, pulling off W.B.'s clothing. W.B. testified that Welsh then placed his penis in W.B.'s anus. He further testified that he tried to get away but was pinned down and could not move. W.B. did not say anything because he was frightened, embarrassed, and ashamed. Rational jurors could have found the force or coercion element satisfied beyond a reasonable doubt based on both the physical force involved and Welsh's abuse of his position of authority.

### 3.      T.B. and the July 8, 2002 Incident

T.B. testified that on July 8, 2002, Welsh touched T.B.'s penis over his clothing. T.B. also testified that he told Welsh to stop and attempted to push Welsh away from him. Based on T.B.'s

testimony, rational jurors could have concluded, beyond a reasonable doubt, that Welsh used force and/or coercion to accomplish sexual contact with T.B. Because of the inconsistencies in T.B.'s sworn recantation and the lack of other evidence suggesting Welsh's innocence, the introduction of T.B.'s sworn recantation does not change this result.

## IV.  Conclusion

For the reasons set forth above, we **AFFIRM** the judgment of the district court denying Welsh's petition for a writ of habeas corpus based on ineffective assistance of trial counsel and insufficiency of the evidence.